# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER ARZAGA, | 1:09-CV-00609 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of nolo contendere on January 21, 1988, to second degree murder in violation of Cal. Penal Code § 187. See Petition at 2. Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

On February 5, 2008, a subsequent parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. See

1

Hearing Transcript attached to Exhibit 1 of Answer (hereinafter "Transcript). Petitioner attended the hearing and was represented by his attorney. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for four years. Id. at 55.

On September 3, 2008, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court challenging the Board's decision. See Answer, Exhibit 1. On November 4, 2008, the petition was denied in a reasoned decision. Id. Petitioner then filed a habeas petition in the California Court of Appeals, Second Appellate District, on December 5, 2008. See Answer, Exhibit 2. The petition was denied on December 15, 2008. Id. Petitioner then filed a petition for review in the California Supreme Court. See Answer, Exhibit 3. On February 11, 2009, the petition was denied. Id.

On April 6, 2009, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition for writ of habeas corpus challenges the 2008 decision of the Board denying parole. Petitioner contends there is no evidence to show he is currently a dangerous risk to society. He further contends there is no evidence to support the multi-year denial. He also claims the Board was not fair and impartial. Finally, he claims the Board continues to rely on immutable factors to deny him parole in violation of his constitutional rights. On June 23, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on July 9, 2009.

## FACTUAL BACKGROUND[1]

On July 24, 1987, Petitioner, along with several co-defendants, went to the residence of Carl Wagner in a pick-up truck. One of the co-defendants, Sara Stratford, had told Petitioner and others about a prior incident. According to Stratford, Wagner had jumped her over a dispute involving five dollars. Upon hearing her story, the others became enraged and went to Wagner's residence to beat him up. Hamilton was driving. Stratford and Walsh were in the front passenger seat; Petitioner and Reyes were seated in the truck bed. They passed by Wagner's residence several times. At one point, witnesses heard the sound of a gun being fired. When Petitioner saw Lawrence Pirrone, the victim, and Carl Wagner, the witness, leave the residence in Wagner's

---

[1] The information is derived from the factual summary as set forth in the parole hearing proceedings. See Transcript at 10-11.

2

1  vehicle, Petitioner and the co-defendants followed. When Wagner's vehicle pulled onto Highway
2  71 with Pirrone driving and Wagner sitting in the front passenger seat, Petitioner and the co-
3  defendants pulled alongside, shouted obscenities, and started shooting. Pirrone was shot. Wagner
4  gained control of the vehicle as the defendants fled the scene at a high rate of speed. Upon arrival
5  of the police, Pirrone was transported to Pomona Hospital where he died from his wounds shortly
6  after 9:00 p.m.

**DISCUSSION**

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an

3

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to

4

or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Institutional behavior; 3) Previous criminal

history; and 4) Limited self-help programming. See Transcript at 47-55.

First, the Board determined that the commitment offense was especially heinous, atrocious or cruel.[2] Specifically, the Board found that the motive for the crime was completely inexplicable. 15 Cal. Code Regs. § 2402(c)(1)(E). The Board stated the none of the Board commissioners could understand why he did what he did. See Transcript at 48. The Board recited the fact that a girl, who Petitioner did not know, complained that a man had gotten into a dispute with her over five dollars, and because of this, Petitioner along with his co-defendants sought out that individual, shot at his vehicle, and killed another man. Id. at 48-49. When the Board asked Petitioner why he had acted in this way, Petitioner could not provide an answer. Id. at 49. He merely stated, "It's just - - to me it's - - it was crazy. I don't understand - - I don't understand it myself." Id. at 49. The superior court determined that there was some evidence supporting the Board's finding. The court stated: "There is no evidence in the record to explain why the Petitioner chose to shoot the victim, who he had no prior relationship with and who was not even implicated by Ms. Stratford as the person who allegedly beat her that day. The Petitioner himself was not able to explain his actions to the Board, but only said that at the time he was under the influence of alcohol and 'stupid.'" See Answer, Exhibit 1. The court concluded that the nature of the offense, when combined with other factors, provided some evidence that Petitioner remained a dangerous risk to the public. Id.

The Board also determined that Petitioner's institutional behavior weighed against suitability. 15 Cal. Code Regs. § 2402(c)(6). Specifically, Petitioner had received nine serious rules violations ("CDC 115") while in prison, several of which were for violent behavior, and

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

two of which were received after his last Board hearing. See Transcript at 47-48, 51. In addition, the Board determined that Petitioner's record of violent and criminal behavior prior to incarceration weighed against suitability. 15 Cal. Code Regs. § 2402(c)(2). Petitioner had sustained several prior convictions, including evading arrest, brandishing a weapon, and multiple occasions of carrying a concealed or loaded weapon. See Transcript at 50-51. Indeed, the Board noted that all of his prior offenses had involved weapons. Id. at 18. The superior court determined that in light of Petitioner's previous record of violent behavior and his commission of serious and violent violations during incarceration, there was at least some evidence to support the Board's conclusion that Petitioner remained a danger to the public.

Finally, the Board considered the fact that Petitioner had only received self-help programming in a limited capacity. See Transcript at 51-52. The Board also noted that Petitioner had failed to provide any recent support letters or verification of parole plans. Id. While not factors that alone can justify a finding of suitability, the Board may consider them as relevant to whether Petitioner is suitable for parole. 15 Cal. Code Regs. § 2402(b). The superior court determined that the Board properly considered these factors in its parole decision.

The Board also considered the positive factors favoring parole release. Petitioner had obtained his GED as well as several marketable vocations. See Transcript at 51-52. The Board also noted that Petitioner had sought out some programming for alcohol abuse and anger management. Further, the Board noted that the psychological report was favorable in that Petitioner had taken responsibility for his crime. Nevertheless, the Board concluded that Petitioner remained an unreasonable risk of danger to the public, because his commitment offense, when viewed along with his previous record of violence, his continuing misbehavior in prison, and his failure to program beyond his minimal attempts, were indicative of a present danger to the public should he be released.

In light of the record, it cannot be said that the state court determination that there was some evidence supporting the Board's finding that Petitioner posed a risk of danger to the public "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Therefore, Petitioner's claim that the Board's decision violated his constitutional rights must be denied.

Petitioner further argues that the Board's multi-year denial was not supported by some evidence. This claim was also rejected by the superior court because the Board provided reasons that justified such a postponement. The superior court found that some evidence supported this denial. Petitioner fails to demonstrate that the superior court's decision was contrary to, or an unreasonable application of, Federal law.

Petitioner also claims that the Board's continuing reliance on the immutable circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." This is simply not the case here. The Board did not rely solely on the commitment offense or Petitioner's previous record of violence. The Board also found Petitioner's continuing misbehavior during incarceration and his failure to program sufficiently to be significant factors indicating unsuitability.

Finally, Petitioner contends the Board was not fair and impartial when it cited a charged CDC-115 rules violation that was later dismissed. There is no evidence to support this claim. The record reflects that the Board noted the CDC-115 but specifically did not take it into account. The Board stated, "Just to let you know, since [the CDC-115 is] pending, we will not be using that 115 today in your hearing." See Transcript at 6-7. The Board refused to discuss it despite Petitioner's willingness to do so, as reflected in the record as follows:

> [PETITIONER]: . . . most likely I'm gonna be found guilty, so you wanna speak on that - - I'm ready to speak on that.
>
> PRESIDING COMMISSIONER SHELTON: Well, I'm not gonna speak on the pending 115 because . . .we can't. . . . You haven't been found guilty of that yet.

See Transcript at 7. Finally, in the issued decision, the Board stated, "We are not counting the pending 115, but unfortunately for you, that may be used against you down the road." Id. at 48.

Therefore, the record is very clear that the pending CDC-115 played no part in the Board's decision, and the record further demonstrates that the Board carefully considered all relevant factors in determining Petitioner's suitability for parole release.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 4, 2009**          /s/ **Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE